362 So.2d 2 (1978)
Craig MILLS and H. Savely McQuagge, Trustees of the Presbytery of Florida, Frank L. Elvery, Richard L. Scoggins, C. Franklin Beall, Louise Eyster, Reeves Bowen and Fred McGehee, As and Constituting the Administrative Commission of the Presbytery of Florida of the Presbyterian Church in the United States; Henry Ragans and Oscar Beck, Jr., As and Constituting the Session of the Madison Presbyterian Church in Madison, Florida, Petitioners,
v.
John P. BALDWIN, Individually and Claiming to Be Moderator of the Session of the Madison Presbyterian Church in Madison, Florida, Bruce M. Bryan, Julian DuRant, Julian Gibson, Theodore Gibson, A.L. Hughes, and Kirby Reichmann, Individually and Claiming to Be Members of the Church Session of the Madison Presbyterian Church in Madison, Florida, Respondents.
No. 51588.
Supreme Court of Florida.
July 20, 1978.
Rehearing Denied September 28, 1978.
C. Graham Carothers of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for petitioners.
F.E. Steinmeyer, III, of Folsom & Steinmeyer, Tallahassee, for respondents.
Raymer F. Maguire, Jr., of Maguire, Voorhis & Wells, Orlando, for James E. Andrews, Stated Clerk of the General Assembly of the Presbyterian Church in the United States, amicus curiae.
Edward D. Foreman and James W. Martin of Brickley & Martin, St. Petersburg, for William P. Thompson, Stated Clerk of the General Assembly of The United Presbyterian Church in The United States of America, and for Robert L. Thompson, Executive Presbyter of The Presbytery of West Florida, Synod of The South, of The United Presbyterian Church in the United States of America, amicus curiae.
*3 SUNDBERG, Justice.
This cause is a petition for writ of certiorari to review a decision of the District Court of Appeal, First District, reported at 344 So.2d 259, which is alleged to be in conflict with St. John's Presbytery v. Central Presbyterian Church, 102 So.2d 714 (Fla. 1958) and Froelich v. Rowley, 102 So.2d 720 (Fla. 1958). On petition for rehearing of our prior denial of writ of certiorari in this cause, we have concluded that this Court is possessed of jurisdiction under Article V, Section 3(b)(3), of the Florida Constitution.
Essentially this case involves a dispute over the ownership of property of the Madison Presbyterian Church in Madison, Florida, or stated more accurately, a controversy as to who constitutes the Madison Presbyterian Church in Madison, Florida. The dispute is occasioned by the withdrawal of a majority of the congregation from the Presbyterian Church in the United States (PCUS) and its claim of title to the church property as against the claim of the minority of the congregation who did not withdraw but remained faithful to the parent church. Applying "neutral principles of law" the majority of the district court concluded that there was no implied trust in favor of the mother church as was found to exist in Central Presbyterian Church, supra, and, accordingly, held the property of the church to be vested in the withdrawing members. The factual background of the controversy is stated in the district court opinion thus:
Plaintiffs in the trial court, [petitioners], were Craig Mills and H. Savely McQuagge, Trustees of the Presbytery of Florida of the Presbyterian Church in the United States; Frank L. Elvery, Richard L. Scoggins, C. Franklin Beall, Louise Eyster, Reeves Bowen and Fred McGehee as and constituting the Administrative Commission of the Presbytery of Florida of the Presbyterian Church in the United States; Henry Ragans and Oscar Beck, Jr. as members of and recognized by the Presbytery of Florida of the Presbyterian Church in the United States as constituting the Church Session of the Madison Presbyterian Church in Madison, Florida. The defendants, [respondents], were (as named and designated by the plaintiffs) John P. Baldwin, individually, and claiming to be Moderator of the Session of the Madison Presbyterian Church in Madison, Florida; Bruce M. Bryan, Julian DuRant, Julian Gibson, Theodore Gibson, A.L. Hughes and Kirby Reichmann, individually and claiming to be members of the Church Session of the Madison Presbyterian Church in Madison, Florida, and Florida First National Bank at Madison, a bank holding funds on deposit in the name of the church. The attorneys for the respective parties entered into a lengthy stipulation which was filed in evidence before the trial judge agreeing upon numerous facts many of which, although not relevant to the application of sterile legal doctrines, are necessary in order to understand the factual basis of the controversy.
A Church Session is the governing body of a local church. A Presbytery is composed of several churches in a geographical area; a Synod is generally composed of all Presbyteries within a state or other designated geographical area and the General Assembly is the highest governing body in the hierarchical spiritual structure of the Presbyterian Church.
The first Presbyterian Church was established in America on the Virginia coast in 1607. Originally there was one main body of Presbyterianism which was known as the Presbyterian Church in the United States of America. (PCUSA) The Madison Presbyterian Church located at Madison, Florida was founded in 1840. It was originally a part of the Presbytery of Georgia but later became a congregation of the Presbytery of Florida. It is, and at all times has been, an unincorporated entity. Since its formation in 1840 all of the church property has been held by trustees elected by a majority of the congregation of the church. The primary church property was acquired by deed executed in March of 1851 to the "Trustees of the Presbyterian Church at Madison aforesaid and their successors in office *4 * * * To Have and To Hold the said lots of land to and for the use of the Presbyterian Church at Madison." In 1861 the Presbytery of Florida met at the Madison Presbyterian Church in Madison and unanimously adopted a resolution severing its affiliation with the Presbyterian Church in the United States of America (PCUSA) and concurred in a call for Commissioners for the organization of a General Assembly with power to organize a new church. The Madison Church sent a delegate to the meeting of the General Assembly held in 1861 (held incidentally at the Madison Church) at which time a resolution was unanimously adopted by which a denomination was formed bearing the name Presbyterian Church in the Confederate States of America. Thereafter, the name of that denomination was changed to the Presbyterian Church of the United States (PCUS). The parties have stipulated that neither the General Assembly of the Presbyterian Church in the United States nor the Synod of Florida nor the Presbytery of Florida has ever contributed any property to the Madison Presbyterian Church, nor has it provided any funds with which the property of said church was acquired.
On March 11, 1973, John P. Baldwin, then the regular ordained and installed Pastor of the Madison Presbyterian Church, presided over a meeting of the congregation. Upon a vote taken at such meeting, a petition was adopted requesting the Presbytery of Florida to dismiss the Madison church and its property from the Presbytery and to dismiss and dissolve the relationship between Rev. Baldwin and the Presbytery of Florida and the PCUS. Following various intrachurch maneuvers a resolution was adopted by the congregation of the Madison Presbyterian Church on May 20, 1973 withdrawing from and severing all relationship with the Presbytery of Florida and the PCUS. On June 5, 1973 the Presbytery of Florida removed the name of John Baldwin from the roll of the Presbytery and declared the pulpit of the Madison Presbyterian Church to be vacant. The Presbytery declared and recognized Messrs. Beck and Ragans, among others, as constituting the Church Session of the Madison Presbyterian Church with full authority to assume control of the congregation and all land, buildings, personal property and monies of the local church.
On August 7, 1973 plaintiffs [petitioners] filed an action in Circuit Court asking that the individual defendants [respondents] and all others associated with them be restrained from interfering with the plaintiffs and other "loyal" members of the PCUS in the use of the property of the Madison Presbyterian Church; from using or attempting to use the property of the Madison Presbyterian Church for any purpose except in conformity with and subject to the government and discipline of the PCUS; from selling, disposing of or encumbering the property of the Madison Presbyterian Church; from paying or delivering to any person or corporation any money, funds, bonds, securities, or other property in their possession or under their control constituting the property of the Madison Presbyterian Church and from occupying the Manse of the Madison Presbyterian Church. The foundation of the plaintiffs' cause of action as alleged in their complaint was a "trust originally imposed upon said property [of the Madison Presbyterian Church] for the promulgation of the trusts and doctrines of the Presbyterian Church in the United States * * *." At the conclusion of a lengthy trial, final judgment was entered for the plaintiffs.
344 So.2d at 260-62 (footnotes omitted).
The majority below determined that the structure of the Presbyterian Church, being hierarchical as opposed to congregational, was immaterial to its resolution of the case because, through application of "neutral principles of law" to the facts, neither form of accepted implied trust (constructive or resulting) could be recognized. This conclusion of the district court was based primarily upon its finding that no funds were provided by either the Presbytery of Florida *5 or PCUS with which any of the property of the Madison Church was acquired. Consequently, the necessary ingredient for a constructive trust was absent. Likewise, there was no evidence at trial that any of the properties conveyed to the Madison Church "were intended to be conveyed for the benefit of any entity other than the congregation of the Madison Presbyterian Church" and therefore, no resulting trust could arise. Its position with respect to the absence of a resulting trust was bolstered by the fact that PCUS did not come into existence until some 21 years after the Madison Church was organized. St. John's Presbytery v. Central Presbyterian Church and Froelich v. Rowley, supra, were distinguished by the district court on the premise that the facts in those cases demonstrated the existence of elements necessary to support a constructive trust.
Most respectfully we must disagree with the analysis of the majority of the district court. This Court subscribes to the reasoning and conclusion of Judge Smith's dissent below, and it would be of little benefit to restate what was so ably put by him. However, since it bears upon the jurisdiction of this Court as well as the merits of the controversy, we deem it appropriate to elucidate why we believe Central Presbyterian Church and Froelich are controlling here.
The salient facts as found by the chancellor in Central Presbyterian Church were:
(1) During the year 1953, defendant, Central Church, withdrew from the Presbyterian Church in the United States (Southern), hereinafter referred to as Presbyterian Church. It is shown that Central Church was organized or established by the First Presbyterian Church of St. Petersburg and received financial assistance from it; that the original deed of conveyance was made to the "Trustees of the West Central Presbyterian Church and their successors." The church was later incorporated under the laws of Florida and title to the realty was conveyed to "Central Presbyterian Church of St. Petersburg, Florida, a corporation."
(2) The chancellor further found that none of these deeds created a trust but were absolute conveyances to the grantees named, the first grantee being Central Church, a corporation; that the will of H.H. and Harriet Victory, deceased, directs their trustees to pay over the balance remaining after certain bequests are paid to certain beneficiaries including "Central Presbyterian Church of St. Petersburg."
102 So.2d at 715.
Based upon his comparison of Chapter 27, paragraphs 9 and 10, Constitution of the Presbyterian Church of the United States of America (PCUSA) with paragraph 163, Book of Church Order of the Presbyterian Church of the United States (PCUS), the chancellor concluded that while the government of PCUSA was hierarchical in nature, that of PCUS was congregational. In reversing the chancellor, this Court stated:
The admissions in the answer and the evidence without contradiction show that the Presbyterian churches in the United States are not congregational in government but are representative, they are governed by an ascending series of judicatories known as the session, the presbytery, the synod and the general assembly, which is governed by a constitution and an ecclesiastical code giving it legislative, executive and judicial powers. Questions of usage, custom or practice relating to the local church or its members are governed by these judicatories and each is bound to the other by church or ecclesiastical law.[1]
102 So.2d at 716.
After reviewing the substance of the documents creating title in the "Central Presbyterian Church of St. Petersburg" (a nonprofit corporation), including the original conveyance to the "Trustees of West Central Presbyterian Church and their successors in office," the Court applied the doctrine of Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666 (1872), and held that the property *6 in question should not be diverted from the parent church by the withdrawing members. Consequently, the faithful minority were awarded the use of the property as the rightful representatives of the original church as it existed before the schism.
The district court opinion herein places great emphasis upon the fact that the affected church in Central Presbyterian Church had been organized and established by an existing Presbyterian church in St. Petersburg from which it received financial assistance and a gift of the disputed property. This, together with the language of the original conveyance of the disputed property, was persuasive to the court as distinguishing the case at bar from Central Presbyterian Church. The district court was bolstered in its conclusion by the reference of Justice Terrell in Central Presbyterian Church to Reid v. Barry, 93 Fla. 849, 112 So. 846 (1927). However, we can draw no such inference from Justice Terrell's discussion of Reid v. Barry. He simply distinguished the latter case from Central Presbyterian Church on the premise that on the face of the deed in Reid there was no reference to a trust for the benefit of the Roman Catholic Church, whereas in Central Presbyterian Church the root deed ran to "Trustees of West Central Presbyterian Church of St. Petersburg and their successors in office." As stated by Justice Terrell:
In Reid v. Barry the complaint nowhere alleges "that the deed was a trust deed, or that it was made to the bishop for the benefit of the Roman Catholic Church." It is silent as to the purpose for which it was made and the Roman Catholic Church is nowhere named therein, while here it is alleged and admitted that the property was acquired by the First Presbyterian Church of St. Petersburg and was given and conveyed to "Trustees of West Central Presbyterian Church of St. Petersburg and their successors ...
102 So.2d at 719.
The conveyances here under consideration run to the "Trustees of the Presbyterian Church at Madison" and the "Trustees of the Madison Presbyterian Church of Madison." In the Reid case the conveyance was absolute on its face with no intimation of beneficial enjoyment in others except the reference to the grantee's office. As the Court pointed out in Reid:
It can hardly be argued that the language of this deed necessarily implies the intention to create a trust, for any particular purpose, or for the benefit of any particular beneficiary, none being named, and there being no precatory words contained therein.
112 So. at 857.
Justice Terrell simply sought to distinguish Reid on the obvious basis that the deed therein contained no language to imply a trust, whereas the deed in Central Presbyterian Church connoted a trust relationship and the object thereof.
The basis for the decision in Central Presbyterian Church is indicated by two excerpts from the opinion. After citing numerous authorities in accord with Watson v. Jones, supra, the Central Presbyterian Church Court said:
This is an abounding array of authorities but they all treat some phase of litigation growing out of church schisms in which both factions lay claim to the church property. When the church is representative, republican or episcopal in government, the authorities uniformly hold that the church property whether held by an express or an implied trust cannot be diverted from the parent church by those who withdraw from it and form a separate denomination. It matters not whether those who withdraw from the mother church constitute a majority or a minority faction, the church property remains with the mother church. There are exceptions to this rule when the schism occurs in a church whose government is congregational in form like the Baptist or Congregational denominations but in churches bound together by associated ecclesiastical government when the local church is obedient to a larger or more important religious organization and is governed by it, such as *7 the Presbyterian, Catholic, Episcopal, Methodist and Lutheran, I have found no exception to this rule. They could not function under any other rule.

102 So.2d at 718 (emphasis supplied).
That the real basis for the decision in Central Presbyterian Church was the principle of church structure, and not neutral principles of trust law, is borne out by the judgment therein:
It follows that the final decree of the chancellor must be, and is, hereby reversed with directions to enter a decree holding that, on account of the circumstances shown an implied trust existed in the property in question in favor of the Central Presbyterian Church of St. Petersburg for the use of the Presbyterian Church in the United States and awarding the use of said property to appellants as the rightful representatives of the original church as it existed before the schism.

102 So.2d at 719-20 (emphasis supplied).
Furthermore, Froelich v. Rowley, supra, decided the same day as Central Presbyterian Church, is even more instructive on this point. In Froelich, another church schism case, where neither the source of the property nor whether it was acquired before or after the congregation's affiliation with the parent church is indicated, Justice Terrell described the substantive issue and its resolution:
The first question presented is whether or not the majority of the congregation of a Presbyterian Church in the United States can withdraw from said church and the presbytery and claim title to the church property as against the claim of title of the minority group who did not withdraw but remained faithful to the parent church.
This is the identical question that was presented and decided in St. John's Presbytery v. Central Presbyterian Church of St. Petersburg. What we said in that case concludes the point raised here contrary to the contention of appellants [the withdrawing majority].
102 So.2d at 721.
In short, a careful reading of the cases makes clear that the issue in a case such as this is not who owns the property. The Madison Presbyterian Church of Madison, Florida, owns the property. The true issue is  who represents the Madison Presbyterian Church? The authorities from Watson v. Jones forward clearly respond that petitioners represent that church because of the structure and government of PCUS. As pointed out in Judge Smith's dissent, the fact that PCUS was formed by the secession of Presbyterian churches in the Confederacy a generation after organization of the Madison Church affects not at all the commitment of the Madison Presbyterian Church to PCUS in 1861 and continuously for generations thereafter.
Accordingly, the petition for certiorari is granted, the opinion of the District Court of Appeal, First District, is quashed and the dissenting opinion is adopted as the opinion of this Court.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON and ALDERMEN, JJ., concur.
BOYD, J., dissents with an opinion, with which HATCHETT, J., concurs.
BOYD, Justice, dissenting.
I would discharge the writ of certiorari because I do not believe there is conflict. As the majority acknowledges, the court below decided the church property dispute based on trust law, while the alleged conflicting decisions, just as the majority's, find the disputes over church property to turn on which group constitutes the church. The questions, one legal, the other, at least partially ecclesiastical, are wholly dissimilar. Nor do I see a misapplication of St. John's Presbytery v. Central Presbyterian Church, 102 So.2d 714 (Fla. 1958) and Froelich v. Rowley, 102 So.2d 720 (Fla. 1958), since principles of trust law were applied in those two cases to factual situations that are, as detailed in the opinion now quashed, *8 dissimilar to the factual situation in this case.
Moreover, I am distressed, Central Presbyterian Church and Froelich notwithstanding, that the Court is so willing to step into a dispute over church property that it believes should be resolved under a "principle of church structure" rather than "neutral principles of ... law," opinion of the Court, before, at 7, when the decision of the court below can stand on the legal principles alone. While a civil[1] court may open its doors to a dispute over church property, the court has no role in settling the matter through a determination on the basis of whether one group departed from church doctrine. Presbyterian Church v. Hull Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). To assume such a role involves the civil courts in an ecclesiastical question solely within the purview of the church contrary to the Freedom of Religion clauses in the First Amendment to the U.S. Constitution.[2] The Court today treads dangerously close to the boundary of territory of religious freedom protected constitutionally from civil court interference. It may be that a determination of church structure is properly within a civil court when church property is at stake, especially in a case in which another forum, such as an ecclesiastical court, will be partial or is unavailable. But the Court in this case need not take the risk of impinging on religious freedom since the case is clearly litigable under trust law.
HATCHETT, J., concurs.
NOTES
[1] It should be noted that the trial judge in the instant case made the identical finding that PCUS is hierarchical and not congregational in structure.
[1] To be distinguished from ecclesiastical and military courts rather than criminal courts.
[2] Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof... .