467 So.2d 772 (1985)
W.S. TOWNSEND, et al., Appellants,
v.
I.R. TEAGLE, et al., Appellees.
No. AZ-158.
District Court of Appeal of Florida, First District.
April 11, 1985.
Rehearing Denied May 14, 1985.
Herman Ulmer, Jr., William E. Scheu and Lori E. Terens of Ulmer, Murchison, Ashby, Taylor & Corrigan, Jacksonville; and Robert P. Smith, Jr. of Hopping, Boyd, Green & Sams, Tallahassee, for appellants.
*773 Edwin B. Browning, Jr. of Davis, Browning & Hardee, Madison, for appellees.
THOMPSON, Judge.
This is an appeal from a final judgment upholding the right of a local Presbyterian congregation to convey a portion of the church's real property to the church pastor and his wife. We reverse.
The appellants in this case are two of the trustees of the First Presbyterian Church of Live Oak, the Presbytery and General Assembly of the Presbyterian Church in the United States (PCUS). Appellees are several individual members of the "Session" of the First Presbyterian Church of Live Oak, the former pastor of the Live Oak church (who was the moderator of the Session), and his wife.
The PCUS is a reformed religious body and is hierarchical in structure and government under its constitution.[1] The structure and form of PCUS government and its Rules of Discipline are constitutionally expressed in the Book of Church Order. Under the Book of Church Order 1981-1982 PCUS is organized into governing bodies of heirarchical, ascending jurisdiction beginning at the local level with the Church Session, through the Presbytery, the Synod, to the national General Assembly. The Session is formed at the local church level and consists of the church pastor and ruling elders. The Presbytery consists of all the ministers and churches within a certain geographic district. The Synod is composed of lay and clergy representatives from the Presbyteries within a geographic area. The General Assembly is the highest PCUS court and represents all of the member churches.
The First Presbyterian Church of Live Oak is a member of PCUS. It is located in the Suwannee Presbytery and within the Synod of Florida. The instant case arose out of certain actions taken by the members of the Live Oak Church Session and congregation, several of whom are the appellees in this appeal.
On December 23, 1981 the Session and congregation petitioned the Suwannee Presbytery to dismiss the Live Oak Church from PCUS and to allow it to depart with all the church property. The request was denied by the Presbytery in January 1982. Shortly thereafter the Session met and considered a proposal to convey the church's manse to the Session moderator and church pastor James Walkup. The Session also discussed several other alternatives regarding the Live Oak Church's relationship with PCUS, but no action was taken.
The Session met again in February 1982 and voted to call a congregational meeting for March 7, 1982 to again consider instructing the church trustees to transfer title to the manse to Walkup and his wife. Appellants W.S. Townsend and N.O. Protsman, two of the three church trustees, informed the Session of their doubts about the propriety of the proposed actions, and asked the Session to delay any congregational meeting until the Suwannee Presbytery could be consulted. The Session refused their request, and on March 7, 1982 the congregational meeting was convened.
At the meeting, the majority present voted on two matters which resulted in the initiation of the proceedings which led to this appeal. The majority voted to instruct the trustees to convey the manse to the Walkups. Trustees Townsend and Protsman again expressed their opinion that following such instructions would violate the terms of their trust. The majority then voted to elect two additional trustees (both of whom are appellees), bringing the total number of trustees to five.
The following day appellants filed a petition in circuit court seeking declaratory and injunctive relief so that the Suwannee Presbytery could have sufficient time to determine the validity of the actions taken at the March 7 meeting. On April 22, while the petition was pending in circuit court, the *774 Session sent a Reference[2] to the Suwannee Presbytery.
On April 30, 1982 the Session called another congregational meeting to be held May 9. Five days before the scheduled meeting the circuit court denied appellants' petition. At the May 9 congregational meeting the majority again elected the two additional trustees and approximately ten days later the two newly elected trustees and one of the original trustees executed a deed purporting to convey the manse to the Walkups. Appellants-trustees Townsend and Protsman did not participate in the conveyance. On June 3, 1982 appellants filed an amended petition in circuit court.
On July 19, 1982 the Suwannee Presbytery found that the calling of the March 7, 1982 meeting, and the actions taken by the congregation at that meeting were unconstitutional, null and void. It also found that the calling of the May 9, 1982 meeting and the reelection of the additional trustees was unconstitutional, null and void. The Session filed an appeal with the Presbytery and filed a motion in circuit court to dismiss the amended petition. The Presbytery reaffirmed its previous findings and in addition "dissolved" the relationship of Walkup as pastor of the Live Oak church, dissolved the relationship of the elders and deacons and declared the true congregation of the Live Oak church to be the members who remained loyal to the PCUS. The Presbytery then referred the matter to the Synod of Florida. On October 18, 1982 the circuit court granted the Session's motion to dismiss appellants' amended petition. Before the Synod issued its decision the Session informed the Synod that it would no longer be a party to the proceedings, nor would it seek any further action from the Synod.
On December 2, 1982 the Synod's Permanent Judicial Commission issued its report holding the actions of the Suwannee Presbytery to be the final action of PCUS in this matter, thereby affirming the Presbytery's decision.
Approximately two weeks after the Synod issued its report, the appellants filed a second amended petition in the circuit court requesting the court to give effect to the findings and holdings of the PCUS courts, i.e., to declare the election of the trustees null and void and to enjoin the conveyance of the manse. After a nonjury trial was held on this petition the trial judge denied appellants' prayer for relief, stating that "a constitutionally constituted congregation of the Presbyterian Church of the United States made the decision to give a portion of the local church's assets to its pastor." The trial court found that under the PCUS Book of Church Order the local congregation's authority with respect to church property was absolute and unappealable within the PCUS hierarchical structure, and that ["t]herefore its decision was final because under the deference-to-church-authority approach, the local congregation became the highest ecclesiastical authority to that particular point." This appeal followed.
Appellants argue that the trial court improperly applied the deference to church authority rule by failing to defer to the decision of the PCUS Synod and by instead examining the PCUS constitution and then giving effect to its own interpretation. Appellants' second point on appeal concerns the implied trust doctrine, but we need not address this issue because we agree with appellants' contentions in their first point on appeal.
In Mills v. Baldwin, 362 So.2d 2 (Fla. 1978) the Florida Supreme Court reversed the decision of the First District Court of Appeal and adopted the dissent, thereby adopting the deference to church authority approach which had originated over a century ago in Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666 (1872). The Florida Supreme Court's decision was appealed to the U.S. Supreme Court which vacated the *775 judgment and remanded the case for reconsideration in light of its recent decision in Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). Baldwin v. Mills, 443 U.S. 914, 99 S.Ct. 3105, 61 L.Ed.2d 878 (1979). In Jones v. Wolf, the court stated that the states may utilize either of two theories when dealing with church property disputes: the neutral principles approach or the deference approach. Following the remand, the Florida Supreme Court reinstated its previous decision. Mills v. Baldwin, 377 So.2d 971 (Fla. 1980). This decision was also appealed to the U.S. Supreme Court, but certiorari was denied. Baldwin v. Mills, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980). Therefore, it is apparent that Florida has made the decision to apply the deference to church authority approach when resolving church property disputes.
The deference approach, as stated in Watson v. Jones, requires the civil courts to defer to the decisions of church authorities on church matters where the church's ecclesiastical government is hierarchical in structure. The civil courts must defer to any decision rendered by the church authorities in matters of "discipline or of faith, or ecclesiastical rule, custom or law." 13 Wall. 679, 20 L.Ed. at 676. The decision of "the highest of these church judicatories to which the matter has been carried" must be accepted as final and binding by legal tribunals. Id. Watson v. Jones also involved a conflict between decisions of the Presbyterian ecclesiastical courts and civil courts.
The states have a legitimate interest in resolving property disputes, but when the dispute involves a controversy over religious doctrine and practice any role that civil courts may play in resolving the dispute is severely circumscribed by the first amendment to the United States Constitution. Presbyterian Church of the United States v. Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). "First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice." 393 U.S. at 449, 89 S.Ct. at 606.
Civil courts which apply the deference approach are precluded from rejecting the decisions of ecclesiastical tribunals of hierarchical churches, substituting their own inquiry into church policy, and then resolving the dispute based on their own interpretations of church law. The Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). Nevertheless, this appears to be precisely what the circuit court has done in the instant case. As in Milivojevich, "this case essentially involves not a church property dispute, but a religious dispute the resolution of which under our cases is for ecclesiastical and not civil tribunals." 426 U.S. at 709, 96 S.Ct. at 2380.
In finding that "a constitutionally constituted congregation of [PCUS]" engaged in the challenged acts, the circuit court improperly made an inquiry into and interpretation of matters that had previously been fully resolved by the PCUS courts. Not only did the circuit court inquire into a dispute already determined by an ecclesiastical court's interpretation of its own constitution, it went on to undertake its own analysis of PCUS doctrine, arriving at a contrary conclusion.
The fact that the dispute involves title to real property or that it involves a conflict among heretofore nonschismatic church members in no way operates to permit the circuit court's intervention. The parties stipulated that the structure of PCUS is hierarchical, and that the highest tribunal to which the matter had been carried was the Synod of Florida. By failing to properly defer to the decision of the Synod the circuit court in effect finds that the Presbytery and Synod did not have the authority to resolve the dispute. Such a finding can only result when a civil tribunal undertakes its own interpretation of church doctrine. This conduct is precisely what the deference approach precludes.
The circuit court should have deferred to the decisions of the PCUS courts, rather *776 than resolving the dispute according to its own interpretation of church law. Accordingly, the decision of the circuit court is reversed.
WIGGINTON, J., concurs.
WENTWORTH, J., dissents with written opinion.
WENTWORTH, Judge, dissenting.
I would affirm because I think the trial court correctly construed and applied the deference doctrine to require a judicial determination of the validity of the duly recorded deed of the manse, approved by 80% of a properly constituted congregation to its minister of 25 years. That issue in this case does not appear to me to be controlled or affected by any ecclesiastical doctrine. No schism had occurred, and the controlling contractual document of church government (before amendment) expressly defined and qualified the general church hierarchical structure by placing final authority in the congregation to control its property. Its compliance with the mechanisms for doing so was also properly reviewed by the trial court. I would therefore affirm the determination that the congregation, under the Book of Order, was the repository of final authority within the hierarchical structure of the church at that time, as follows:
[T]he case at hand is one in which a constitutionally constituted congregation of the Presbyterian Church of the United States (hereafter referred to as PCUS) made the decision to give a portion of the local church's assets, to its pastor ... in appreciation of his service to them for the preceeding twenty-five (25) years as their pastor, and who was continuing in his position as pastor of the local congregation. Thus, the first issue relates to the authority of the local congregation to make such a conveyance. There is no dispute but that "The Book of Church Order, Presbyterian Church in the United States, 1981-1982" is the relevant and controlling church authority. The parties stipulated that the PCUS is hierarchical in structure and government, ... In applying the "deference-to-church authority approach," which is appropriate in Florida, it might appear on first impression that the action of the Suwannee Presbytery, in declaring the conveyance of the manse void, would be controlling. However, under the "Book of Church Order," the local congregation is not a "Court." Its authority with respect to Church property is absolute and not appealable within the hierarchical structure of the PCUS. Therefore, its decision was final because under the deference-tochurch authority approach, the local congregation became the highest ecclesiastical authority on that particular point. Thus, it is important to examine carefully the language of Section 6-1, of the "Book of Church Order," which provides as follows:

`A particular church which is not incorporated, desiring to elect trustees, may select from among its confirmed membership trustees or officers of like nature who shall have the power and authority to buy, sell, or mortgage property for the church, to accept and execute deeds as such trustees, to hold and defend titles to the same, to manage any permanent special funds entrusted to them for the furtherance of the purposes of the church. In the fulfillment of their duties such trustees shall be subject always to the authority, and shall act solely under the instructions, of the congregation which they serve as trustees. The powers and duties of such trustees must not infringe upon the powers or duties of the Session or of the Board of Deacons. Such trustees shall be elected in regularly constituted congregational meetings.' (emphasis supplied)
The local congregation overwhelmingly, by a margin of 104 to 24, voted to make the conveyance to the pastor and his wife. The evidence did not place in issue any ill motives of the congregation with respect to such vote, except by innuendo. Rather, Petitioners focused upon the alleged improper motives of several key leaders within the local church, as well as the pastor.

*777 Section 6-1, quoted above, appears to be clear on its face, and indeed, the Petitioners' own expert witness, THOMAS BROWN, made it clear that under PCUS church law, the local congregation had the power to make the conveyance; ... In addition, one of the Petitioners, ... conceded that the congregation of other local churches have conveyed the "manse" to their pastor in appreciation of long service to the local congregation. He described such circumstances as a "very normal, ordinary situation."
Petitioners seek to invoke the doctrine of an implied trust, which has been judicially determined to exist in this State in favor of PCUS. However, the evidence failed to demonstrate a violation of this trust. The frailty of the implied trust doctrine was apparently recognized by the PCUS when it amended its "Book of Church Order" to declare an express trust. However, this action was subsequent to the events giving rise to the case at hand.
Petitioners have raised claims of procedural irregularities with respect to the action of the local congregation in conveying the manse. However, the evidence is insufficient to support any material or substantial deviation from the appropriate standards.
NOTES
[1] PCUS is no longer extant, having merged with the United Presbyterian Church in the United States of America in June 1983 to form the Presbyterian Church (USA). All events relevant to this case, however, occurred prior to the merger.
[2] A Reference is a written application, made by one PCUS court to the next highest court, seeking advice or other action on a pending matter.