ROBERTS, J.
This appeal involves the ownership of a piece of real property housing a church in Jackson County, Florida. After a jury trial, title was quieted in favor of the ap-pellee, Sneads Community Church, Inc. (SCC). The appellant, New Jerusalem Church of God, Inc. (NJC, Inc.), raises several issues on appeal. Primarily, it argues that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict (JNOV) on the grounds that NJC, Inc., is a hierarchical church and, therefore, owns the property at issue. We agree with the appellant that the trial court erred in denying its motion for directed verdict on this ground and accordingly reverse the denial of its motion for JNOV. The appellant also raises issues regarding the denial of its motion for new trial, namely whether the trial court erred in restricting its voir dire and whether the trial court erred in denying its requested jury instruction. We find no error in the voir dire and do not address the jury instruction issue as it is subsumed by our reversal. In light of our reversal, we also find it unnecessary to address the appellees’ cross-appeal.

Facts

NJC, Inc., was founded by Bishop R.B. Hemingway and incorporated in 1947. NJC, Inc., self-identifies as a hierarchical church, meaning that there is a mother church in Orlando, Florida, and various local churches, primarily in Georgia and Florida, whose pastors are appointed by NJC, Inc., who receive guidance from NJC, Inc., when requested, and who are directed to follow NJC, Inc.’s religious tenets and doctrines including its governing document, The Book of Rules (the Book). The Book includes various requirements for church members including tithing and attendance at annual conferences.
With regard to property ownership by NJC, Inc.’s local churches, the Book mandates that local property is to be held in trust by NJC, Inc., by a legally elected board of trustees who are members of the church. The Book also provides that the local church deeds are to contain a trust clause that the property is for the ministry and membership of NJC, Inc., and subject to its doctrines and laws. With regard to property ownership, the Book provides:
Members of any New Jerusalem Church of God disorganizing or dissolving cannot use or take any property with them; such property will revert to the State annual for church purposes only under the supervision of the District Bishop.
The New Jerusalem Church of God of Sneads, Florida (NJC, Sneads), came into being sometime in the early 1960s. In 1964, Bishop Hemingway appointed Willis L. Raines, Sr., as the pastor of NJC, Sneads. In 1965, at an annual NJC, Inc., conference, appellee Mr. Lewis was ordained as a deacon. As early as 1965, NJC, Sneads, was reporting money to NJC, Inc., at the annual conference. As of 1965, NJC, Inc., believed that NJC, Sneads, was under its umbrella of churches.
In 1966, NJC, Sneads, using money raised by local parishioners, purchased the property at issue. Title to the local property was taken by Raines, Mr. Lewis, Mrs. Lewis, and two others as “trustees of the New Jerusalem Church of God of Sneads, Florida.” This deed did not conform to the manner dictated by the Book in several undisputed ways: the trustees were not elected, the local church was not deeded to NJC, Inc., and the requisite trust clause *27 was not included. The appellees argue that this non-conformance was intentional to reflect their intent that the local church would own the property rather than NJC, Inc. The appellant maintains that it was not aware that the deed did not conform to the Book because NJC, Sneads, affirmatively represented that the property was deeded to NJC, Inc., and continued to actively participate with NJC, Inc., long after the property was acquired.
By all accounts, NJC, Sneads, actively participated in NJC, Inc., from the 1960s to the 1990s in various ways such as by attending annual conferences and contributing financially. Appellees Mr. and Mrs. Lewis along with Raines all admitted that for 30 years, NJC, Sneads, was associated with NJC, Inc., and that NJC, Sneads, followed the Book to some extent. However, the appellees seem to make the distinction that NJC, Sneads, was loosely associated -with the New Jerusalem Church of God, but argue that it was not under the NJC, Inc., umbrella.
By the mid-1990s, Raines had left NJC, Sneads, and NJC, Sneads, became dissatisfied with the replacement pastor appointed by NJC, Inc. In 1995, a meeting was held in Sneads with representatives from NJC, Sneads, and NJC, Inc., during which NJC, Sneads, expressed its displeasure with NJC, Inc. The effect of this meeting reverberated differently with the parties. The appellant maintains that it understood NJC, Sneads’ frustrations, but did not believe that NJC, Sneads, was formally disaffiliating from NJC, Inc. The appellees, however, maintain that this meeting constituted their notice that NJC, Sneads, was completely parting ways with NJC, Inc.
In 1997, the trustees on the original 1966 deed (including the appellees Mr. and Mrs. Lewis) conveyed the property “as trustees of the New Jerusalem Church of God of Sneads, Florida” to SCC. It was by this conveyance that the appellee SCC asserted ownership in the property. This conveyance was made without the knowledge of the appellant, who claimed to be unaware of the cloud on its title to the property until 2000.
In 2002, the appellant filed a complaint to quiet title in its favor. In the complaint, the appellant asserted that it was a hierarchical church and argued that the appel-lees were prohibited from claiming any right to the property as per NJC, Inc.’s governing documents. The appellant also argued that the appellee SCC had no right to the property because the purported grantors in the 1997 deed had no actual or apparent authority from NJC, Inc., the cestui que trust, to convey the property to SCC. The appellees filed affirmative defenses and counterclaimed to quiet title in favor of SCC on the basis of the 1997 conveyance.
A jury trial was held in which the appellant’s witnesses testified that, although the Book did not specifically state that NJC, Inc., was a hierarchical church, the structure of the organization and manner of governance was clearly hierarchical. At the close of testimony, the appellant moved for directed verdict, arguing that the trial court was obligated to defer to its self-characterization as a hierarchical church. The appellant further argued that the evidence showed NJC, Sneads, was a part of the hierarchical church structure, and by virtue of this hierarchical structure, the property was owned by NJC, Inc. The trial court denied the motion for directed verdict, and the case was submitted to the jury, which returned a verdict finding that the property was owned by SCC.
The appellant filed a motion for JNOV in which it requested a judgment in accordance with its motion for directed verdict and based upon the manifest weight of the evidence in its favor. The motion for *28 JNOV was denied, and final judgment was entered quieting title in favor of SCC.
We review the trial court’s denial of the motion for directed verdict and the motion for JNOV de novo. See Specialty Marine & Indus. Supplies, Inc. v. Venus, 66 So.3d 306, 309 (Fla. 1st DCA 2011). As stated in Lindon v. Dalton Hotel Corp., 49 So.3d 299, 303 (Fla. 5th DCA 2010):
When deciding the appropriateness of a directed verdict or JNOV, Florida trial and appellate courts use the test of whether the verdict is, for JNOVs, or would be, for directed verdicts, supported by competent, substantial evidence. Speedway SuperAmerica, LLC v. Dupont, 933 So.2d 75, 79 (Fla. 5th DCA 2006). A motion for directed verdict or JNOV should be granted only if no view of the evidence could support a verdict for the nonmoving party and the trial court therefore determines that no reasonable jury could render a verdict for that party. See Cecile Resort, Ltd. v. Hokanson, 729 So.2d 446, 447 (Fla. 5th DCA 1999). If there are conflicts in the evidence or different reasonable inferences may be drawn from it, then the issue is a factual one that should be submitted to the jury and not be decided by the trial court as a matter of law.
In considering the issues in this case, we find two layers of inquiry are necessary. First, whether the trial court was obligated, as a matter of law, to defer to NJC, Inc.’s self-characterization as a hierarchical church. Second, whether, as a matter of law and a matter of fact, NJC, Sneads, was affiliated with NJC, Inc., such that the property belonged to NJC, Inc. We find that both of these inquiries should be answered in the affirmative, thus requiring reversal of the final judgment.

NJC, Inc., as a Hierarchical Church

Over the years, the courts have been faced with balancing the constitutional guarantees regarding religion found in First Amendment with the need for judicial intervention in the resolution of inter-church disputes. The case law has unfolded to create two approaches to resolve interchurch disputes: the “neutral principles approach” and the “deference approach.”
The appellant represents that, with regard to resolving church-related property disputes, Florida has adopted the deference approach. The deference approach originated in Watson v. Jones, 80 U.S. (13 Wall) 679, 20 L.Ed. 666 (1871). Watson ruled that, in a hierarchical church structure,[1] the local church congregation could not withdraw from the hierarchical church, denounce its authority, refuse to abide by its judgments, and still retain the local church property. Id. at 734-35. That ruling was based upon Watson’s holding that the civil courts must accept and enforce the decisions of the hierarchical church tribunals in matters of discipline, of faith, or ecclesiastical rule, custom, or law. Id. at 727. Watson articulated the need for deference to church authority under the notion of implied consent. That is, those who voluntarily unite themselves to a religious association do so with an implied consent to the association’s manner of governance and are bound to submit to it. Id. at 728-29.
But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one ag *29 grieved by one of their decisions could appeal to the secular courts and have them reversed.

Id.

The deference approach was later approved in Serbian East Orthodox Diocese for the United States & Canada v. Milivo-jevich, 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (stating that where resolution of ecclesiastical disputes cannot be made without extensive inquiry by civil courts into religious law and polity, “the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them.”).
Florida adopted the deference approach to church property disputes in Mills v. Baldwin, 362 So.2d 2, 7 (Fla.1978), wherein the Florida Supreme Court held that, when a portion of the congregation of a local church withdrew from a hierarchical church with which the local church had been affiliated, ownership of the property of the local church did not transfer to the separating body, but remained with the congregation that remained loyal to and recognized by the hierarchical church. Mills was appealed to the United States Supreme Court, which vacated the judgment and remanded the case for reconsideration in light of Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979) (stating that church property disputes may also be resolved by applying neutral principles of law). See Baldwin v. Mills, 443 U.S. 914, 99 S.Ct. 3105, 61 L.Ed.2d 878 (1979). Following remand, the Florida Supreme Court reinstated its previous decision in Mills. See Mills v. Baldwin, 377 So.2d 971 (Fla.1980). This decision was also appealed to the United States Supreme Court, but certiorari was denied. See Baldwin v. Mills, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980). The history of Mills makes it “apparent that Florida has made the decision to apply the deference to church authority approach when resolving church property disputes.” Townsend v. Teagle, 467 So.2d 772, 774 (Fla. 1st DCA 1985).
In the instant case, NJC, Inc., asserted that it is a hierarchical church, a characterization that the appellees claim to have disputed, but offered no proof to support the dispute. To allow the trial court or, in this case, the jury to determine whether NJC, Inc., was hierarchical allows the finder of fact to delve into matters of religious doctrine and polity — an inquiry that is clearly prohibited. As such, the trial court was obligated to defer to NJC, Inc.’s self-characterization and to recognize, as a matter of law, that NJC, Inc., is a hierarchical church.
Upon determining, as a matter of law, that NJC, Inc., is a hierarchical church, it would follow then that NJC, Inc., controls the property of its local affiliates. See Bethel AME Church of Newberry, Fla. v. Domingo, 654 So.2d 233 (Fla. 1st DCA 1995) (holding that Mills requires that church property remain with the parent church where the church is hierarchical in structure). While this is the general rule in Florida, this rule does not end our inquiry. To simply conclude that local church property automatically flows to the mother church by virtue of a hierarchical church’s claim of ownership could lead to unfair results. Rather, we find that a second layer of inquiry is relevant here to determine property ownership. That is whether NJC, Sneads, was affiliated with NJC, Inc., such that it was a part of, and subordinate to, the hierarchical structure.

*30
Ownership of the Property

As a matter of fact, the evidence showed that NJC, Sneads, was affiliated with NJC, Inc., for over 30 years. Such evidence included the fact that pastors for NJC, Sneads, were appointed by NJC, Inc.; NJC, Sneads, contributed to NJC, Inc., financially; and NJC, Sneads, participated in NJC, Inc.’s annual conferences and events. Finally, members of NJC, Sneads, admitted to the affiliation. NJC, Sneads’ position seems to be its affiliation was loose and that, in certain matters including property ownership, it chose to deviate from NJC, Inc.’s structure. We cannot agree to this characterization of the relationship.
In Falls Church v. Protestant Episcopal Church in the United States, 285 Va. 651, 740 S.E.2d 530, 540 (2013), the Virginia Supreme Court observed that the relationship created by a local church’s decision to join a hierarchical church is analogous to a contractual relationship. We find this general analogy fitting here. The evidence clearly showed mutual assent to the hierarchical relationship; NJC, Sneads, assented to NJC, Inc.’s hierarchy for over 30 years by, among other things, contributing financially to NJC, Inc., attending annual conferences, and, in return, received the benefit of the guidance from NJC, Inc., and the use of the church name. NJC, Inc., clearly assented to NJC, Sneads’ membership as well. When NJC, Sneads, voluntarily affiliated with NJC, Inc., it was subject to all the provisions in the Book and could not pick and choose which religious tenets to adopt.[2] By choosing to unite under NJC, Inc., NJC, Sneads, consented to NJC, Inc.’s governance and, specifically in this case, structure of property ownership.
NJC, Sneads, argues that title was taken in trust for the New Jerusalem Church of Sneads, Florida, not NJC, Inc. We do not find the language of the deed availing as “of Sneads, Florida” was clearly descriptive, and the only incorporated entity at the time was NJC, Inc. See Sweet v. Ranger Realty Co., 108 Fla. 249, 146 So. 199, 200 (1933) (holding that where the identity of a corporation is clear, a corporate misnomer is not material).
Based on the foregoing, we find that NJC, Sneads, was clearly affiliated with NJC, Inc., a hierarchical church. Under the hierarchical property structure as set forth in NJC, Inc.’s governance, as well as our jurisprudence, the property belongs to NJC, Inc. See Full Gospel Temple of Tallahassee v. Redd, 82 So.2d 589, 590 (Fla.1955) (holding that, when the appellants withdrew from the parent church, they “carried nothing but their membership with them; the parent church retained title to the properties.”). The trial court erred in denying NJC, Inc’s motions for directed verdict and JNOV on this ground. Accordingly, we set aside the final judgment quieting title in favor of SCC and remand the matter with instructions that judgment be entered in favor of NJC, Inc.
REVERSED and REMANDED with instructions.
LEWIS, C.J., and ROWE, J., concur.

. This structure was defined in Watson as one where "the religious congregation or ecclesiastical body holding the property was but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization.” Id. at 722-23.

. Notably, NJC, Inc.’s own representative testified that church members were directed to follow the Book, but admitted that some of its tenets were no longer universally followed as they were outdated, i.e., the prohibition on playing horseshoes.