DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DISTRICT ADVISORY BOARD OF THE SOUTHERN FLORIDA DISTRICT, CHURCH OF THE NAZARENE, INC.,** and **BRIAN WILSON,**
Appellants,

v.

**CENTRO DE ALABANZA OASIS WEST PALM BEACH, INC.,** and
**IGLESIA DEL NAZARENO BELEN, INC.,**
Appellees.

No. 4D21-756

[May 25, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 50-2016-CA-011985-XXXX-MB.

Dane E. Leitner of Ward Damon PL, West Palm Beach, for appellants.

Elaine Johnson James of Elaine Johnson James, P.A., Palm Beach Gardens, for appellees.

CONNER, C.J.

Appellants, District Advisory Board of the Southern Florida District, Church of the Nazerene, Inc. ("the District") and Brian Wilson (collectively "Appellants"), appeal the final summary judgment entered below in favor of appellees, Centro De Alabanza Oasis West Palm Beach, Inc. ("Oasis, Inc.") and Iglesia Del Nazareno Belen, Inc. ("Iglesia, Inc.") (collectively "Appellees"). This dispute concerns ownership of real property operating a church. Appellants contend that pursuant to the "ecclesiastical abstention doctrine," a lay court cannot adjudicate who, within a church, is authorized to run that church. Appellants further contend that to resolve the dispute of ownership of real property in this case, a court would necessarily need to decide which faction within the church controls the church. Because we determine a genuine issue of material fact exists as to Iglesia, Inc.'s affiliation with the Church of the Nazarene, and thereby, the District, summary judgment was inappropriate and we reverse.

*Background*

Throughout this litigation, the parties presented opposing views of their relationship. According to Appellants, the District is an entity created by the General Assembly of the Church of the Nazarene ("the Church of the Nazarene") and is made up of interdependent local churches in the South Florida area. Appellants contended that appellee, Iglesia, Inc. is one such interdependent local church under the umbrella of the District and the Church of the Nazarene, and that the subject property dispute was ecclesiastic in nature. However, Appellees maintained that this was not a dispute between a parent church and a local church. Instead, Appellees asserted that Iglesia, Inc. is not a local church, but simply a Florida non-profit organization and a separate entity altogether.

Galo E. Poveda was ordained as a minister by the Church of the Nazarene, and founded the Iglesia Church, serving as its pastor. In 1995, Poveda formed Iglesia, Inc. and served as its president and director, with his daughter, Roxana Poveda-Mendoza, also serving as a director of the company. The summary judgment evidence below reflected that the bylaws of Iglesia, Inc. were the Manual of the Church of the Nazarene ("the Manual"), which is the governing document of the Church of the Nazarene. In 2003, Iglesia, Inc. sought to purchase real property in West Palm Beach but could not qualify for a mortgage, so the District agreed to co-sign for the mortgage. Title to the subject property was then conveyed to the District at the sale closing.

By 2007, the District had been assessed over one million dollars in fines for municipal code violations on the property. The District then recorded a warranty deed transferring title and fee simple ownership of the property to Iglesia, Inc. Notably, the warranty deed's language contained no restrictions or reversionary rights in favor of the District, and simply conveyed title to the property to Iglesia, Inc. in fee simple. Shortly thereafter, the District's lawyer wrote a letter to the city of West Palm Beach seeking an extension of time for Iglesia, Inc. to obtain funds in order to bring the property up to code and stating that title had just been transferred to Iglesia, Inc.

In 2014, Iglesia, Inc. resolved to withdraw from the Church of the Nazarene, formalizing a corporate resolution stating that Iglesia, Inc. would take all necessary action required by the Manual to withdraw from the Church of the Nazarene. Specifically, the corporate resolution provided that at a meeting of Iglesia, Inc.'s corporate directors, the following action was authorized:

2

TO TAKE ALL NECESSARY ACTION REQUIRED BY THE MANUAL OF THE CHURCH OF [THE] NAZARENE TO WITHDRAW <u>IGLESIA DEL NAZARENO BELEN, INC.</u> FROM THE CHURCH OF [THE] NAZARENE INCLUDING, THE EXECUTION OF ALL DOCUMENTS AND MEET ALL REQUIREMENTS NECESSARY TO COMPLETE THE WITHDRAWAL.

(emphasis added).

Thereafter, the District voted to declare Iglesia, Inc. as a "church in crisis" per the Manual, to remove the names of the local church board members as the corporate officers and appoint replacement persons as the local church's governing board, and to transfer the subject property to the District from Iglesia, Inc. As such, Wilson, the then president of the District, filed an annual report on behalf of Iglesia, Inc. identifying himself as the president of Iglesia, Inc. and also listing the newly appointed individuals as officers and directors of Iglesia, Inc. In October 2015, Wilson signed and recorded a warranty deed in his capacity as the president of Iglesia, Inc., which purported to transfer ownership and title to the subject property back from Iglesia, Inc. to the District ("the October 2015 Warranty Deed").

After discovering Wilson's annual report filing, Poveda filed an amendment to Iglesia, Inc.'s articles of incorporation, deleting all references to the persons listed therein. On behalf of Iglesia, Inc., Poveda then attempted to quitclaim the property to another entity, Oasis, Inc., for which Poveda also served as president since its incorporation in 2014. Subsequently, additional competing annual reports were filed purportedly on behalf of Iglesia, Inc. in which Wilson again claimed to be the president thereof, while Poveda deleted Wilson and his cohorts as officers and directors of Iglesia, Inc.

*The Litigation*

Appellees filed suit in 2016 against the District and Wilson, alleging they fraudulently filed the October 2015 Warranty Deed and annual reports in violation of section 817.535, Florida Statutes (2021). Appellees sought to quiet title to the subject property against the District asserting that Iglesia, Inc. acquired fee simple ownership and title to the subject property in 2007 from the District and that Wilson was never authorized to act on Iglesia, Inc.'s behalf, such that the October 2015 Warranty Deed he signed and recorded was fraudulent and clouded Iglesia, Inc.'s title to the property.

In response, Appellants asserted that the subject dispute related to ownership of church property such that the dispute was purely ecclesiastic in nature and that the trial court lacked jurisdiction to adjudicate the religious matter. Appellants also brought their own counterclaim for quiet title, asserting the District was duty-bound to protect all District and church property from being diverted to any personal or corporate use other than for the church and to certify the withdrawal of any local church from the Church of the Nazarene for the purpose of implementing the transfer of title to real property.

The parties eventually filed competing motions for summary judgment, asserting the same positions taken in the complaint and answer.

At the summary judgment hearing, the parties disputed whether the Church of the Nazarene was a hierarchical church such as to enable it to invoke the ecclesiastical abstention doctrine. Notably, the trial court acknowledged that if resolving the case required it to interpret provisions of the Manual, then that would not be an appropriate matter for the court to decide because that is something that would be reserved to the church. Specifically, the trial court acknowledged that the issue of what occurred when the church was declared to be "in crisis," and how the board was overtaken, presented circumstances very similar to cases in which the courts do not get involved, as such cases appear to relate to internal decisions dealing with subordinate churches.

However, the trial court reasoned that in this case, whether the church was hierarchical or congregational was not relevant to the ruling on the competing summary judgment motions. Rather, the trial court stated that it had not considered the Manual's provisions, and instead had based its judgment on the application of neutral principles of Florida real estate and corporate law to real estate transactions between two non-profit Florida corporations. In doing so, the trial court ruled in favor of Appellees, concluding that the District and its president, Wilson, were not members, directors, or officers of Iglesia, Inc. and were unauthorized to transfer title from Iglesia, Inc. back to the District, such that the October 2015 Warranty Deed was materially false, unauthorized, null and void.

Subsequently, Appellants gave notice of appeal.

### Appellate Analysis

The granting of a motion for summary judgment is reviewed *de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla.

4

2000). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). The burden is on the moving party to show "conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought." *Moore v. Morris*, 475 So. 2d 666, 668 (Fla. 1985). "If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." *Id.*

On appeal, Appellants contend that the trial court should have dismissed the suit pursuant to the "ecclesiastical abstention doctrine." Appellants assert that pursuant to this doctrine, a lay court cannot adjudicate who, within a church, is authorized to run that church, maintaining that to resolve the dispute of ownership of real property in this case, a court would necessarily need to decide which faction within the church controls it. *See Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Bank of Am., N.A.*, 321 So. 3d 245, 247 (Fla. 4th DCA 2021).

In our recent decision in *Eglise*, a non-profit corporation, conducting business as a Baptist church, sued two banks for negligently granting control of the church's bank accounts to the widow of the deceased pastor. *Id.* at 246. The trial court granted the banks' motion to dismiss for lack of subject matter jurisdiction, based upon the ecclesiastical abstention doctrine. *Id.* On appeal, we affirmed, reasoning:

> [A]lthough the Church's negligence claims against the Banks involve a question of control over bank accounts, *in order to resolve those claims the court would necessarily have to decide which faction within the Church controls the bank accounts. The only way for the court to make this determination is for it to consider the Church's internal governance structure. "[Q]uestions of church governance are manifestly ecclesiastical."* *Id.* Accordingly, the trial court did not err in dismissing the case for lack of subject matter jurisdiction based on the ecclesiastical abstention doctrine.

*Id.* at 247 (second alteration in original) (emphasis added).

Notably, Appellants point out that "Florida has made the decision to apply the deference to church authority approach when resolving church property disputes." *Townsend v. Teagle*, 467 So. 2d 772, 775 (Fla. 1st DCA 1985).

5

The deference approach, as stated in *Watson v. Jones*, [80 U.S. 679 (1871),] requires the civil courts to defer to the decisions of church authorities on church matters where the church's ecclesiastical government is hierarchical in structure. The civil courts must defer to any decision rendered by the church authorities in matters of "discipline[,] or of faith, or ecclesiastical rule, custom or law." [*Watson*, 80 U.S. at 727]. The decision of "the highest of these church judicatories to which the matter has been carried" must be accepted as final and binding by legal tribunals. *Id.*

*Id.* (emphasis added). "The fact that the dispute involves title to real property or that it involves a conflict among heretofore nonschismatic church members in no way operates to permit the circuit court's intervention." *Id.*

Appellants argue that the trial court was required to make a two-pronged inquiry whereby it was to first determine whether the Church of the Nazarene is hierarchical in nature and then determine whether Iglesia, Inc. was affiliated with the church to an extent that it was part of, and a subordinate to, that hierarchical structure. *See New Jerusalem Church of God, Inc. v. Sneads Cmty. Church, Inc.*, 147 So. 3d 25, 26 (Fla. 1st DCA 2013).

*New Jerusalem* involved an interchurch dispute regarding which of two churches owned a piece of property. *Id.* There, a mother church self-identified as a hierarchical church and asserted it owned the property of a local church whose deed did not conform to the requirements of the church's governing document. *Id.* The local church went on to convey the property to another church prompting suit by the mother church. *Id.* After a jury trial, final judgment was entered quieting title in favor of the new church and the mother church appealed. *Id.* On appeal, the First District held:

To allow the trial court or, in this case, the jury to determine whether [the mother church] was hierarchical allows the finder of fact to delve into matters of religious doctrine and polity—an inquiry that is clearly prohibited. *As such, the trial court was obligated to defer to [the mother church]'s self-characterization and to recognize, as a <u>matter of law,</u> that [the mother church] is a hierarchical church.*

*Id.* at 29 (emphasis added). The First District then explained:

6

Upon determining, as a matter of law, that [the mother church] is a hierarchical church, it would follow then that [the mother church] controls the property of its local affiliates. *See Bethel AME Church of Newberry, Fla. v. Domingo*, 654 So. 2d 233 (Fla. 1st DCA 1995) (holding that *Mills* [*v. Baldwin*, 362 So. 2d 2, 7 (Fla. 1978)], requires that church property remain with the parent church where the church is hierarchical in structure). While this is the general rule in Florida, this rule does not end our inquiry. To simply conclude that local church property automatically flows to the mother church by virtue of a hierarchical church's claim of ownership could lead to unfair results. Rather, we find that *a second layer of inquiry is relevant here to determine property ownership. That is whether [the local church] was affiliated with [the mother church] such that it was a part of, and subordinate to, the hierarchical structure.*

*Id.* (emphasis added). The First District noted that the evidence which had been presented at trial demonstrated that while the local church's position was that its affiliation with the mother church was "loose," such characterization of the relationship was at odds with the clear evidence of mutual assent to the hierarchical relationship with the mother church, which included the local church's financial contributions to the mother church, attendance at annual conferences, and receipt of guidance from the mother church as well as use of its name. *Id.* at 30. As such, the First District determined that the local church was clearly affiliated with the mother church, which was a hierarchical church, such that according to the church's governance, as well as the case law, the property properly belonged to the mother church. *Id.* (citing *Full Gospel Temple of Tallahassee v. Redd*, 82 So. 2d 589, 590 (Fla. 1955) (holding that, when the appellants withdrew from the parent church, they "carried nothing but their membership with them; the parent church retained title to the properties.")).

In the instant case, Appellants are correct that the deference approach required the trial court to follow the two-part inquiry set forth in *New Jerusalem*. As to the first inquiry, the trial court was obligated to defer to Appellants' characterization of the Church of the Nazarene as hierarchical in nature and to recognize, as a matter of law, that it is a hierarchical church.

As to the second inquiry, whether Iglesia, Inc. was affiliated as a subordinate to the hierarchical structure of the church, Appellants argue

that the Appellees have admitted their dispute is ecclesiastic in nature such that their divorce must be governed under the same principles. In this regard, the summary judgment evidence reflected that both Poveda and Mendoza acknowledged that Iglesia, Inc.'s 2014 corporate resolution stated that Iglesia, Inc. would take all necessary action required by the Manual to withdraw from the Church of the Nazarene. Therefore, summary judgment evidence in the record reflects that Iglesia, Inc. was not just a non-profit corporation, but to some extent, part of the Church of the Nazarene, such that it needed to abide by the Manual's provisions for withdrawal from the Church of the Nazarene. Indeed, Mendoza's deposition testimony confirmed both that the church board of Iglesia, Inc. resolved to withdraw from the Church of the Nazarene, and that Iglesia, Inc. was a part of the Church of the Nazarene before that resolution. Mendoza further admitted that the Manual represents Iglesia, Inc.'s bylaws.

Therefore, because some summary judgment evidence indicates that Iglesia, Inc. was affiliated with the Church of the Nazarene, and that its withdrawal from the Church of the Nazarene would need to meet the Manual's requirements, the question of whether the process by which the District took control over the Iglesia, Inc. board after declaring it a "church in crisis" would arguably be a question of church governance and require interpretation of the Manual's withdrawal procedures. In other words, to the extent that Iglesia, Inc. was affiliated with the Church of the Nazarene, the determination of control over the Iglesia, Inc. board would be subject to the ecclesiastical abstention doctrine.

Appellees' argument that Iglesia, Inc. was merely a non-profit organization separate and apart from the Church of the Nazarene relies on contradictory evidence, and thus fails to justify affirmance of summary judgment in their favor. Moreover, to the extent Appellees rely on the assertion that Poveda used his own personal savings in making the initial purchase of the subject property, the record indicates that subsequent mortgage payments were purportedly derived from parishioners' tithes to the church. Appellees' assertion that the District was outwardly representing that it no longer had interest in this property by sending a letter to the city in 2007, advising that title to the property had just been transferred to Iglesia, Inc., was also qualified by Appellees' admission that the District's purpose for sending this letter was to obtain an extension of time for Iglesia, Inc. to be able to obtain funds in order to bring the property up to code. Likewise, testimony that the District itself had not made any financial contributions to Iglesia, Inc., and that since 2007, the District had not provided any support to Iglesia, Inc. or the Iglesia Church, in support of the argument that Iglesia, Inc. was unaffiliated with the Church

of the Nazarene, conflicts with the testimony of both Poveda and Mendoza acknowledging Iglesia, Inc.'s subsequent 2014 corporate resolution to withdraw from the Church of the Nazarene, as well as deposition testimony that prior to the 2014 corporate resolution, Iglesia, Inc. was a part of the Church of the Nazarene and the Manual represents Iglesia, Inc.'s bylaws. Finally, Appellees' argument that Appellants had admitted that a Nazarene Church Board, as defined by its Manual, is a different entity than the board of a Florida Corporation, inaccurately characterizes the record.

### *Conclusion*

The conflicting summary judgment evidence of Iglesia, Inc.'s affiliation with and subordination to the Church of the Nazarene precluded summary judgment. Therefore, we reverse the final summary judgment and remand for further proceedings for the trial court to conduct the two-prong inquiry set forth in *New Jerusalem*. If the trial court determines that Iglesia, Inc. is affiliated with the Church of the Nazarene, and thereby the District, as a subordinate, then deference to the District's determination is required and the trial court is precluded by the ecclesiastical abstention doctrine from interfering with a matter of church governance.

*Reversed and remanded for further proceedings.*

GERBER and KUNTZ, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***